## AFFIDAVIT IN SUPPORT OF
## APPLICATIONS FOR SEARCH WARRANTS

I, Ronald Morin, a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI), being duly sworn, do depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of applications for search warrants for information associated with the following SUBJECT TELEPHONES: (1) assigned call number (207) 219-1839, with IMSI 310260137444547, and IMEI numbers 357680886065224 and 357680886043270, that is stored at premises controlled by **T-Mobile US, Inc.**, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey; (2) assigned call number (603) 498-5599, with International Mobile Subscriber Identity 311480735048568, and IMEI number 355140118474712, that is stored at premises controlled by **Verizon Wireless**, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey; (3) assigned call number (603) 498-5614, with International Mobile Subscriber Identity 311480735040378, and IMEI number 355140118343222, that is stored at premises controlled by **Verizon Wireless**, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey; and (4) assigned call number (603) 812-1205, with International Mobile Equipment Identity (IMEI) number 355140115016334, and IMSI number 311480622727846, that is stored at premises controlled by **Verizon Wireless**, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of applications for search warrants under 18 U.S.C. § 2703(c)(1)(A) to require **T-Mobile US, Inc.** and **Verizon Wireless** to disclose to the

government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI), and have been so employed since May 2006. I am currently assigned to the Manchester, New Hampshire field office. I am a "Federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. As part of my regular duties as an agent, I investigate criminal violations relating to a broad range of immigration and customs-related statutes, as well as those relating to child exploitation, child pornography, coercion and enticement of minors, human trafficking, and interstate stalking of a minor. I have received training in the area of child pornography and child exploitation, and as part of my duties have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. §2256) in various forms of media, including digital/computer media. I have conducted investigations and executed search warrants involving cellular telephone data.

3. The statements in this affidavit are based on my own investigation of this matter as well as on information provided by other law enforcement officers. Unless otherwise indicated, the statements contained herein are summaries of information that I have received from other law enforcement officers, and I specifically relied on oral reports and opinions from other law enforcement officers. When information is based on my personal knowledge or conclusion, it will be so stated. Conversations and discussions below are set forth

2

in substance only unless noted otherwise. Any statements excerpted from recorded conversations, including those quoted herein, are preliminary and subject to further revision.

4. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. While I have included all material facts relevant to the requested search warrant, I have not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2261A (interstate stalking of a minor) has been committed by Michael Adam Chick ("CHICK"). There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

6. At all times relevant to this investigation, Michael Adam Chick ("CHICK") was a resident of Eliot, Maine.

7. Beginning in May 2022, the Greenland New Hampshire Police Department began investigating CHICK, a school bus driver, and his inappropriate conduct towards a minor, John Doe1, a resident of Greenland, New Hampshire.

8. On May 6, 2022, Greenland Police Officer Michael Drake and School Resource Officer Nicholas Drew spoke with CHICK about his behavior towards John Doe1, and they directed him to have no further contact with John Doe1 and his family. At that time, CHICK provided his telephone number (207) 219-1839 (hereinafter "CHICK's telephone") to officers. As discussed below, through this investigation, the Greenland Police Department confirmed that telephone number (207) 219-1839 was CHICK's primary phone number, with service provided by T-Mobile.

3

9. On July 2, 2022, the parents of John Doe1 reported that two Tracfone cell phones were found in John Doe1's bedroom. When questioned about the phones by his parents, John Doe1 advised that CHICK had given him the phones. John Doe1 explained that, several days after Greenland Police Officers told CHICK to have no further contact with John Doe1 and his family, CHICK called John Doe1 over to his bus and offered the cell phones. Although John Doe1 initially declined CHICK's offer, he eventually accepted the cell phones. John Doe1 provided the passcode "8888" for both phones. John Doe1's parents examined the two Tracfone cell phones. While they did not see if any photographs had been sent or received, John Doe1's parents noted that there were three contacts stored in one of the phones: AA[1] (telephone number (603) 498-5614), BB (telephone number (603) 812-1205) and CC (CHICK's telephone, (207) 219-1839). John Doe1's parents provided the two Tracfone cell phones to Officer Drake.

10. On July 7, 2022, Greenland Police Sergeant Wayne Bertogli obtained state search warrants for the two Tracfone cell phones recovered by John Doe1's parents.

11. On or about July 12, 2022, Portsmouth Police Detective Duane Jacques performed Cellebrite extractions of the two Tracfone cell phones, which are identified as follows:

    a. Greenland Police Evidence Item # 22GRE-56-PR
        Manufacturer—Blu
        Model—B130DL1
        Assigned telephone number—(603) 498-5599[2]
        IMSI— 311480735048568
        Service Provider—Verizon Wireless

---

[1] The parents reported this contact as "AA," however, Portsmouth Detective Duane Jacques later confirmed that the contact was listed as "AC" on the phone based on the Cellebrite extraction.
[2] This is the telephone number saved as "S" under contacts for the Tracfone assigned telephone number (603) 498-5614 (Greenland Police Evidence Item # 22GRE-57-PR).

4

    b. Greenland Police Evidence Item # 22GRE-57-PR
        Manufacturer—Blu
        Model—B130DL
        Assigned telephone number—(603) 498-5614[3]
        IMSI—311480735040378
        Service Provider—Verizon Wireless

12. Based on his review of the extractions, Detective Jacques noted the following:

    a. From (603) 498-5599 (22GRE-56-PR) –
        i. Call logs showed incoming/outgoing calls starting on 5/19/2022 and ending 6/3/2022;
        ii. Contacts "AC" (telephone number (603) 498-5614), "BB" (telephone number (603) 812-1205), and "CC" (CHICK's telephone number (207) 219-1839) were located in the call log;
        iii. Two incoming SMS from "CC" (CHICK's telephone number (207) 219-1839) on 06/02/22;
        iv. From the web history, a link to a news article with the headline "A 1-year-old boy died after being raped by 2 Russian soldiers, Ukraine says | Start Magazine" that had been viewed on 05/21/2022;
        v. Several images from a weather application for Eliot, Maine; and
        vi. Wi-Fi profile "chickhouse" was identified.

    b. From (603) 498-5614 (22GRE-57-PR) –
        i. Call logs showed incoming/outgoing calls starting on 5/19/2022 and ending 6/3/2022;
        ii. Contacts "CC" (CHICK's telephone number (207) 219-1839) and "S" (telephone number (603) 498-5599) were located in the call log;
        iii. Six incoming SMS from "CC" (CHICK's telephone number (207) 219-1839), including a message on 06/08/22 stating, "Clearly, you just aren't going to listen. So I think I might tell them to just go ahead and do it.";
        iv. One incoming SMS from telephone number (603) 812-1205[4];
        v. One image from a weather application for Eliot, Maine; and
        vi. Wi-Fi profiles "chickhouse" and "1986state" were identified.

13. On July 11, 2022, pursuant to a state search warrant, T-Mobile provided subscriber information and phone records for telephone number (207) 219-1839 (CHICK's

---

[3] This is the telephone number saved as "AC" under contacts for the Tracfone assigned telephone number (603) 498-5599 (Greenland Police Evidence Item # 22GRE-56-PR).
[4] This telephone number was saved as "BB" under contacts for the Tracfone assigned telephone number (603) 498-5599 (Greenland Police Evidence Item # 22GRE-56-PR).

5

telephone). The phone records identified the subscriber as "Michael Chick" in Eliot, Maine, with service effective October 7, 2021. The phone records further identified IMSI 310260137444547 to CHICK's telephone.

14. On July 12, 2022, pursuant to a state search warrant, Verizon Wireless provided subscriber information and phone records for telephone number (603) 812-1205, which was subscribed to Tracfone, with service effective May 22, 2022. Verizon Wireless records for telephone number (603) 812-1205 showed only contacts with three other phone numbers, (207) 219-1839 (CHICK's telephone), (603) 498-5614, and (603) 498-5599, which are all directly connected to CHICK as described herein.

15. Pursuant to a state search warrant, on July 20, 2022, Greenland Police Chief Tara Laurent and Sgt. Bertogli obtained and reviewed school bus surveillance footage from May 6, 2022, through June 15, 2022, for interactions between CHICK and John Doe1. The surveillance footage provided additional evidence that CHICK provided cellular phones to John Doe1 and coached John Doe1 on how to use the phones. Below are transcriptions of relevant conversations[5] between CHICK and John Doe1 captured by the bus surveillance system, which I believe is consistent with a pattern of harassment and intimidation of John Doe1 through threats.

    a. May 13, 2022

| | |
|---|---|
| CHICK: | I'm not mad at you. I understand why you didn't lie to your mom. We're still in this situation, right? Have you been worried about it? |
| John Doe1: | Yeah |
| CHICK: | Remember our deal? The reason they haven't gone to that (inaudible) is I've been paying $1,000 a week (inaudible) hold them off while I try to figure out what I gotta do. At some point I want to give you this (inaudible) cell phone. |
| John Doe1: | I don't think I can. |
| CHICK: | You can use it at school. Use it in the bathroom. |

---

[5] The transcription provided is preliminary only. The surveillance system had audio and video capabilities, but the audio quality suffered due to a number of factors, including the presence of other children.

6

| | |
|---|---|
| John Doe1: | I don't think I can take that. |
| CHICK: | I don't know what else … I don't know what to do then. |

  b. <u>May 20, 2022 (morning)</u>

| | |
|---|---|
| CHICK: | Can't say anything about this. It has to be done today. Take this and put it in your backpack. At some point after 9 o'clock go in the bathroom when you're by yourself and call the number that's been pre-programmed into it. Ok? |
| John Doe1: | Okay. |
| CHICK: | The passcode is – just remember your age – it's 8888 … four 8s. You won't have to bring this home. You can drop it off (inaudible) |
| John Doe1: | Can I do it at my house? |
| CHICK: | You'd rather have the – |
| John Doe1: | I'd rather do it at my house. |
| CHICK: | For today can you just call at the school and then return the phone to me? Sorry. 8888. |

  c. <u>May 24, 2022</u>

| | |
|---|---|
| CHICK: | What happened to the thing? I'm sure the battery's dead now. |
| John Doe1: | I couldn't call (inaudible). |
| CHICK: | Nobody found it, right? |
| John Doe1: | Yeah, nobody found it. |
| CHICK: | This one's way easier to use. |
| John Doe1: | What? |
| CHICK: | This one's way easier to use. |
| John Doe1: | Ok. |
| CHICK: | There are three contacts in it. |
| John Doe1: | Ok. |
| CHICK: | The contacts are easy to find. There's an A, a B, and a C, alright? That's the name of the contacts under favorites. If you go to contacts, then favorites … try A first, then if that doesn't go through, then B, then go to C, ok? If anyone does find it, you found it on the ground at school near the lost and found. |
| John Doe1: | Ok. |
| CHICK: | I didn't give it to you. |

  d. <u>June 6, 2022 (morning)</u>

| | |
|---|---|
| CHICK: | You didn't bring the dead one? Yesterday, when your mom and dad were in Boston and you were at your grandmother's house, we were right across the street. (Inaudible) and I'm doing everything I can to stop them from doing very bad things. You remember last week when you called? |
| John Doe1: | Yeah. |
| CHICK: | I don't know if you listened to everything I said, but you need to check in. |
| John Doe1: | Check what? |

| | |
|---|---|
| CHICK: | You need to check in daily. Thursday you walked by |
| John Doe1: | I'm sorry. |
| CHICK: | I called you over and you just kept on walking. I had to tell them that. |
| John Doe1: | I don't think I heard you. I'll try doing it today. |
| CHICK: | Alright. Can you stop by the bus this afternoon? |

    e. June 6, 2022 (afternoon)

| | |
|---|---|
| CHICK: | So, Last...Last Wednesday was good (inaudible) and got your call, but then the rest of the week, you didn't (inaudible). If I have to tell you something... |
| John Doe1: | Yeah. |
| CHICK: | in the week to do, you didn't do it and that's why they followed you to your grandmother's house. Especially if you're gonna go somewhere, you gotta let me know (inaudible). They were there yesterday, and they were going to cause (inaudible) that needed to be done and you weren't going to do it. I lied to them and said you did it Saturday. |
| John Doe1: | Yeah. |
| CHICK: | (Inaudible) don't have the proof that's on the phone and I can't get the phone right now. So, if I get the phone Monday, I can give it to them Tuesday ... but that means what you were supposed to do Saturday and what I told them was done you obviously haven't done, so you have to do it today. |
| John Doe1: | Yeah. |
| CHICK: | Alright? |
| John Doe1: | Yeah. |
| CHICK: | So, even if you (inaudible), put that in your backpack (inaudible) charger again, okay? |

16. Based on the surveillance footage, the Greenland Police Department requested assistance from HSI due to the threats that CHICK made about unidentified individuals whom he suggested intended to harm John Doe1 should he fail to do something with one or more of the cell phones that CHICK provided.

17. On July 26, 2022, HSI Special Agent Eric Tracy conducted surveillance of CHICK's residence at 1989 State Road in Eliot, Maine, where he observed a vehicle registered to CHICK parked in the driveway. SA Tracy checked for available Wi-Fi networks while parked to the left of the driveway and identified the available secure network "1986state".

18. During a forensic interview conducted on July 26, 2022, John Doe1 disclosed that CHICK had given him three cell phones at different times.

19. On August 2, 2022, a Maine district court issued a search warrant for CHICK's person, his residence, and his vehicle. The warrant specifically authorized seizure of CHICK's telephone, the TracFone telephone assigned to (603) 812-1205, written communications between CHICK and John Doe1, and telephone records.

20. On August 3, 2022, in preparation for the search warrant execution, investigators conducted surveillance at CHICK's residence and observed that CHICK's vehicle had not been at the residence during the overnight and early morning hours. Eliot Police Sgt. Ronald Lund learned that CHICK was in Old Town, Maine, from CHICK's mother. At Sgt. Lund's request, CHICK's mother called CHICK's telephone, and Sgt. Lund was able to speak with CHICK. CHICK confirmed that he was at a friend's residence in Old Town, Maine. Sgt. Lund informed CHICK that he could send Old Town Police Department over to view CHICK's vehicle. CHICK explained that he did not intend to return until later in the week.

21. Sgt. Lund then contacted the Old Town Police Department and requested their assistance with executing the search warrant of CHICK's person and his vehicle. Investigators from HSI-Bangor assisted the Old Town Police Department with the search of CHICK's person and his vehicle. From CHICK's vehicle, investigators located the following: a TracFone, a digital camera, duct tape, rubber gloves, sweet liquor, candy, children's clothing including underwear, children's toys, and a magnetic GPS vehicle tracker. From CHICK's person, investigators located and seized CHICK' telephone. Pursuant to the search warrant issued on August 2, 2022, officers seized only the two cell phones. According to investigators, CHICK provided limited information in a recorded interview. CHICK and his vehicle were released.

9

22. While CHICK's person and vehicle were searched in Old Town, other investigators conducted a search of his residence in Eliot, Maine. From CHICK's bedroom, investigators located the following: one BLU TracFone, an Apple iPhone, assorted phone records, plastic zip-top bag with notes and children's underwear, assorted notes (handwritten and printed from computer(s)), several surveillance cameras including two "pinhole" cameras (with SD cards), tracking devices, two TracFone boxes, two TracFone cards, assorted portable storage media, a 32-GB recording device, a Dell Inspiron laptop, and a Toshiba Satellite laptop.

23. The search of CHICK's bedroom included numerous handwritten and computer-printed documents that law enforcement believed documented CHICK's grooming behavior, including the following:

   a. A handwritten note with Spanish phrases that loosely translate to: "Can I suck you off this weekend?" and "I want to sleep with you". Investigators learned that John Doe1 speaks some Spanish[6].

   b. A handwritten note with the following comments/instructions: "Good job, you were great last night. Thank you. You saved yourself. Would have taken you away on Friday." "Wasn't hard to do, right?" "Take off your sleeping shorts and put on your undies that you wore today. No shirt, nothing else. Use the phone, go to the camera." This particular note gave detailed instructions on how to take body selfies from different angles/positions and then offers "extra credit" for making a "video of anything you would consider naughty. Make sure it is a new video." "Take phone, wrap the phone up in the undies. Put them in a zip lock bag, zip it up tight. Put that in another zip lock bag, zip it up tight. Put that in the lunch box, zip it up. Check to make sure the coast is clear, bring lunch box into bathroom. Open window, drop straight down. Then you're done."

24. The handwritten and computer-generated documents, as well as the photographs of children and children's underwear recovered from CHICK's bedroom, strongly suggests that CHICK has a sexual interest in minors, including John Doe1.

---

[6] In a prior affidavit, I incorrectly stated that "Investigators learned that JohnDoe1 is fluent in Spanish." I recently learned that JohnDoe1 speaks some Spanish, but he may not be fluent.

25.  While on site for the search warrant execution at CHICK's residence in Eliot, Maine, I checked for available Wi-Fi networks and identified the Wi-Fi network "chickhouse." CHICK's mother later confirmed that "chickhouse" was the name of their secure Wi-Fi network.

26.  At approximately 8:00 p.m. on August 3, 2022, while investigators were still on scene executing the search warrant, CHICK returned to his residence. Upon CHICK's return, Sgt. Bertogli and HSI Special Agent Michael Perrella encountered him on the front lawn and asked to speak with him. Sgt. Bertogli advised CHICK that he was not under arrest, he was not being detained, he was free to leave whenever he wanted, and he could speak to an attorney if he chose to. CHICK agreed to speak with Sgt. Bertogli and SA Perrella, and their conversation took place outside on the front yard and away from the other investigators who were still performing the search. The following is a brief synopsis of CHICK's statements to investigators:

    a. CHICK advised that he had taken two one-minute videos of another minor "peeing" in the bathroom. CHICK claimed he did not watch the videos.

    b. CHICK said that the "cares a lot" for John Doe1.

    c. CHICK admitted that he threatened John Doe1 during conversations on the bus. CHICK further admitted that he put the computer-generated note that read, "YOU HAD TOO MANY CHANCES THIS IS NOT WORKING WE ARE DONE FUCKING ROUND MAKE THIS HAPPEN NOW OR THE KID DISAPPEARS" on his lap and asked John Doe1 to read it.

    d. CHICK advised that he had some pictures of John Doe1 in public settings, possibly on his phone.

    e. CHICK admitted that he placed magnetic cellular GPS tracking devices on vehicles belonging to John Doe1's parents. Through the tracking devices, CHICK

11

      knew that John Doe1's parents had gone to the Greenland Police station on several occasions. He said the trackers were still on their vehicles and active.[7]

   f. CHICK advised that he had been to John Doe1's residence approximately 6-10 times during nighttime hours. He denied ever going to the residence to pick up a lunch box containing a cell phone that he had instructed John Doe1 to take pictures of himself with, as described in a handwritten note discussed above.

   g. CHICK said that he spoke with John Doe1 several times over the cell phones he provided to the child.

   h. When asked about underage images online, CHICK responded, "There shouldn't be a lot, I'm not sure what is on the computer." CHICK further stated that, if there was any child exploitation material, such material would be located on his black Dell laptop computer. CHICK voluntarily provided investigators with the passcode for his Dell laptop computer.

27. When CHICK indicated that he no longer wished to speak with investigators, the interview ended at approximately 10:33 p.m. CHICK was never restricted in his movement or taken into custody. During his discussions with Sgt. Bertogli and SA Perrella, CHICK took breaks to smoke cigarettes and talk to family members.

28. Once the interview concluded, investigators executed a secondary search warrant of CHICK's vehicle and recovered a Coolpix digital camera, a magnetic cellular GPS tracker, Micro SD card, Zetroiny wireless camera, GPS, and Nexar Dashcam w/SD card.

---

[7] Investigators subsequently located and removed the tracking devices from the vehicles. The trackers were located on the vehicles where CHICK described having placed them.

29. Due to the number of computers, computer media, and other electronic devices located in CHICK's room and evidence that he used cell phones and computer media to communicate with John Doe1, investigators obtained a secondary search warrant to seize computers, computer media, and other electronic devices located in CHICK's bedroom and in his vehicle that were observed by investigators in Old Town. Pursuant to the secondary search warrant authorized on August 3, 2022, investigators seized the computers, computer media, and other electronic devices.

30. On August 11, 2022, a federal search warrant authorized the search of seized computer, computer media, and other electronic devices seized on August 3, 2022. At the time of this submission, forensic analysis of those devices is ongoing.

31. A preliminary forensic analysis of CHICK's cellular telephone identified that CHICK had taken photographs and videos of John Doe 1 and his family in public places around NH, that CHICK recorded numerous videos on the school bus, that CHICK's cellular telephone was receiving notification and location data from the tracking devices he installed on John Doe 1 parents vehicles, and that CHICK's cellular telephone had remote monitoring ability/alerts for the TracFones.

32. Cell-site location information for the time period identified in Attachment B is likely to constitute evidence of Interstate Stalking of a Minor by showing that CHICK's cellular telephone travelled from Maine to New Hampshire, that CHICK's cellular telephone followed the TracFone's to public places in NH (Water Country, Lowes, Market Basket, baseball games), connecting image/video files on CHICK's phone to location data, that CHICK's cellular telephone followed the trackers to public places in NH, also connecting image/video files on

13

CHICK's phone to location data and that CHICK's cellular telephone was at John DOE 1's residence in the middle of the night on several occasions.

33. In my training and experience, I have learned that **T-Mobile US, Inc.** and **Verizon Wireless** are companies that provide cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

34. Based on my training and experience, I know that **T-Mobile US, Inc.** and **Verizon Wireless** can collect cell-site data about the SUBJECT PHONES. I also know that wireless providers such as **T-Mobile US, Inc.** and **Verizon Wireless** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes. On 08/18/2022 HSI sent a preservation request to TracFone Wireless for data associated with 603-498-5599, 603-498-5614, and 603-812-1205. On 08/23/2022, HSI sent a preservation request to T-Mobile for data associated with 207-219-1839.

35. Based on my training and experience, I know that **Verizon Wireless** also collects per-call measurement data, which **Verizon Wireless** also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

## AUTHORIZATION REQUEST

36. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

37. I further request that the Court direct **T-Mobile US, Inc.** and **Verizon Wireless** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrants will be served on **T-Mobile US, Inc.** and **Verizon Wireless**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

/s/ Ronald Morin
Special Agent Ronald Morin
Department of Homeland Security
Homeland Security Investigations

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. P. 41 and affirmed under oath the contents of this affidavit and application.

Hon. Andrea K. Johnstone   Daniel J. Lynch
United States Magistrate Judge
Date: August 26, 2022

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to records and information associated with the following:

1. the cellular telephone assigned call number (603) 498-5599, with International Mobile Subscriber Identity 311480735048568, and IMEI number 355140118474712;

2. the cellular telephone assigned call number (603) 498-5614, with International Mobile Subscriber Identity 311480735040378, and IMEI number 355140118343222; and

3. the cellular telephone assigned call number (603) 812-1205, with International Mobile Equipment Identity (IMEI) number 355140115016334, and IMSI number 311480622727846;

(collectively, "the Accounts"), that are stored at premises controlled by **Verizon Wireless ("the Provider")**, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey.

## **ATTACHMENT B**

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **May 1, 2022 through August 5, 2022**:

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

2

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received as well as per-call measurement data (also known as the "real-time tool" or "RTT" data).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of **Title 18, United States Code, Section 2261A** involving **Michael Chick** during the period May 1, 2022, through August 5, 2022.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

3

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Verizon Wireless, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Verizon Wireless. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Verizon Wireless, and they were made by Verizon Wireless as a regular practice; and

    b.    such records were generated by Verizon Wireless's electronic process or system that produces an accurate result, to wit:

        1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Verizon Wireless in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by Verizon Wireless, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                                            Signature